# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> v.<br><br>ESTERLINE TECHNOLOGIES CORPORATION, CURTIS C. REUSSER, MICHAEL J. CAVE, MICHAEL J. COVEY, DELORES M. ETTER, ANTHONY P. FRANCESCHINI, PAUL V. HAACK, MARY L. HOWELL, SCOTT E. KUECHLE, and NILS E. LARSEN,<br><br>    Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on October 10, 2018 (the "Proposed Transaction"), pursuant to which Esterline Technologies Corporation ("Esterline" or the "Company") will be acquired by TransDigm Group Incorporated and Thunderbird Merger Sub Inc. (together, "TransDigm").

2. On October 9, 2018, Esterline's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with TransDigm. Pursuant to the terms of the Merger Agreement, Esterline's stockholders will receive $122.50 in cash for each share of Esterline common stock they hold.

3. On November 7, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Esterline common stock.

9. Defendant Esterline is a Delaware corporation and maintains its principal executive offices at 500 108th Avenue NE, Bellevue, Washington 98004. Esterline's common stock is traded on the NYSE under the ticker symbol "ESL." Esterline is a party to the Merger Agreement.

10. Defendant Curtis C. Reusser is President, Chief Executive Officer, and Chairman of the Board of the Company.

11. Defendant Michael J. Cave is a director of the Company.

12. Defendant Michael J. Covey is a director of the Company.

13. Defendant Delores M. Etter is a director of the Company.

14. Defendant Anthony P. Franceschini is a director of the Company.

15. Defendant Paul V. Haack is a director of the Company.

16. Defendant Mary L. Howell is a director of the Company.

17. Defendant Scott E. Kuechle is a director of the Company.

18. Defendant Nils E. Larsen is a director of the Company.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Esterline (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of November 1, 2018, there were approximately 29,488,510 shares of Esterline common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff

3

and the other members of the Class if defendants' conduct complained of herein continues.

24. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

27. Esterline is a leading worldwide supplier to the aerospace and defense industry specializing in three core business segments: Advanced Materials; Avionics & Controls; and Sensors & Systems.

28. Operations within the Advanced Materials segment focus on technologies including high-temperature-resistant materials and components used for a wide range of military and commercial aerospace purposes, and combustible ordinance and electronic warfare countermeasure products.

29. Operations within the Avionics & Controls segment focus on technology interface systems for commercial and military aircraft and similar devices for land- and sea-based military vehicles, integrated cockpit systems, display technologies for avionics, training and simulation markets, secure communications systems, specialized medical equipment, and other high-end industrial applications.

30. The Sensors & Systems segment includes operations that produce high-precision temperature and pressure sensors, specialized harsh-environment connectors, electrical power distribution equipment, and other related systems principally for aerospace and defense customers.

31. On October 9, 2018, Esterline's Board caused the Company to enter into the Merger Agreement with TransDigm.

32. Pursuant to the terms of the Merger Agreement, Esterline's stockholders will receive $122.50 in cash for each share of Esterline common stock they hold.

33. According to the press release announcing the Proposed Transaction:

TransDigm Group Incorporated (NYSE: TDG) and Esterline Technologies Corporation (NYSE:ESL) announced today that they have entered into a definitive agreement under which TransDigm will purchase all of the outstanding shares of common stock of Esterline for $122.50 per share in cash, which represents a premium of 38% to Esterline's closing price on October 9, 2018, or a total transaction value of approximately $4.0 billion including the assumption of debt. The transaction has been approved by the Boards of Directors of both companies. TransDigm expects the acquisition to be financed primarily through cash on hand and the incurrence of new term loans, and currently anticipates the acquisition to be modestly accretive to TransDigm's adjusted earnings per share within the first year of ownership.

The acquisition of Esterline expands TransDigm's platform of proprietary and sole source content for the aerospace and defense industries, including significant aftermarket exposure. Headquartered in Bellevue, Washington, Esterline is an industry leader in specialized manufacturing for these sectors with anticipated fiscal year 2018 revenue of approximately $2.0 billion. The company consists of 28 business units organized across eight platforms to deliver specialty aerospace, defense and industrial products. The company employs over 12,500 employees in more than 50 operating locations throughout the world.

Esterline has attractive platform positions in both the OEM and aftermarket and has substantial content on many important commercial aircraft variants, many regional and business jet aircraft and major defense platforms. . . .

The acquisition will be financed through a combination of existing cash on hand of approximately $2 billion and the incurrence of new term loans. TransDigm has obtained commitments for the full amount of financing required for the transaction. Immediately upon closing, the combined company will maintain the financial flexibility to meet any anticipated operating, acquisition, and other opportunities that may arise though a combination of cash on hand, undrawn revolver, and under certain circumstances, additional availability under its credit agreement.

The transaction is subject to customary closing conditions, including Esterline stockholder approval and the receipt of required regulatory approvals. The companies expect to complete the transaction in the second half of calendar 2019.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

34. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

35. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

36. First, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman").

37. With respect to Goldman's Illustrative Present Value of Future Share Price Analyses, the Proxy Statement fails to disclose: (i) the estimated fully-diluted shares of Company common stock outstanding; and (ii) the individual inputs and assumptions underlying the discount rate of 11%.

38. With respect to Goldman's Illustrative Discounted Cash Flow Analyses, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for the Company; (ii) the

individual inputs and assumptions underlying the discount rates ranging from 9.5% to 10.5%; and (iii) the number of fully-diluted outstanding shares of the Company.

39. With respect to Goldman's Premia Paid Analysis, the Proxy Statement fails to disclose the acquisitions observed by Goldman in the analysis as well as the premiums paid in such transactions.

40. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

41. Second, the Proxy Statement fails to disclose the terms of the engagement agreement entered into by the Company and its additional financial advisor, Evercore Group L.L.C. ("Evercore"). Among other things, the Proxy Statement fails to disclose the amount of compensation Evercore received or will receive in connection with its engagement. The Proxy Statement also fails to disclose whether Evercore has performed past services for any parties to the Merger Agreement or their affiliates, as well as the timing and nature of such services and the amount of compensation received by Evercore for such services.

42. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

43. Third, the Proxy Statement fails to disclose whether the Company entered into any non-disclosure agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

44. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were

permitted to do so, when in fact they are or were contractually prohibited from doing so.

45. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of Our Board of Directors and Reasons for the Merger; (iii) Opinion of ESL's Financial Advisor; and (iv) Financial Forecasts.

46. The omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Esterline

47. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Esterline is liable as the issuer of these statements.

49. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

50. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

52. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

53. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

54. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

55. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of Esterline within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Esterline and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

59. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 26, 2018

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*